IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| EASON LAND CO., LLC, an Oregon Limited Liability Company, and JESSE D. WHITE and PAMELA J. WHITE, husband and wife, | Case No. 2:14-CV-00951-SU |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR; DIRECTOR OF THE BUREAU OF LAND MANAGEMENT; OREGON STATE DIRECTOR OF THE BUREAU OF LAND MANAGEMENT; and DISTRICT MANAGER FOR THE VALE DISTRICT OF THE BUREAU OF LAND MANAGEMENT, JORDAN RESOURCE AREA, | |
| Defendants. | |

SULLIVAN, Magistrate Judge:

Eason Land Co., LLC ("Eason LLC") and Jesse and Pamela White (collectively "plaintiffs"),

landowners and/or assignees-of-interest with water and grazing rights in southeastern Oregon, filed

a complaint against the Secretary of the United States Department of the Interior, Director of the

Bureau of Land Management, Oregon State Director of the Bureau of Land Management, and

Page 1 - FINDINGS AND RECOMMENDATION

District Manager for the Vale District of the Bureau of Land Management, Jordan Resource Area (collectively "BLM"), asserting claims arising out of the BLM's alleged failure to fully implement a decision to remove or retrofit certain reservoirs. The BLM moves to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the BLM's motion should be granted.

## BACKGROUND

This case involves a challenge to the implementation of a BLM decision that authorizes retrofication and abandonment of 20 reservoirs in a livestock grazing allotment known as the Jackies Butte Allotment. The Jackies Butte Allotment, located within the Jordan Field Office of the BLM's Vale District, consists of over 200,000 acres of publicly-administered land. Compl. ¶¶ 4-6, 8. Eason LLC is an Oregon company that owns private land, water rights, and base property in and around the Jackies Butte Allotment. *Id.* at ¶¶ 3, 8, 10-11, 13-26; 43 C.F.R. § 4110.2-1. The Whites lease private property and water rights from Eason LLC; they also hold an associated BLM grazing permit for the Jackies Butte Allotment. Compl. ¶ 3; Compl. Exs. 1-4.

Because the Jackies Butte Allotment has relatively few water sources, thereby limiting the amount of grazing that can occur, the BLM constructed and operated various reservoirs beginning in the 1960s. Compl. ¶ 27. According to plaintiffs, these actions impaired their senior water rights. *Id.* at ¶ 28. In 1973, the BLM and plaintiffs' predecessors-in-interest, Ralph and Beverly Eason, entered into a written contract ("Contract") pursuant to which the Easons agreed "to allow the BLM to construct and maintain as many water structures and developments as may be necessary for proper management of the Jackies Butte Unit on which they control the water right." Compl. Ex. 5, at 109;

Page 2 - FINDINGS AND RECOMMENDATION

*see also* BLM's Mem. in Supp. of Mot. Dismiss Ex. A; Chad Decl. Ex. C, at 3.[1] In exchange, the BLM allocated the Easons an additional 1,400 Animal Unit Months ("AUMs")[2] of forage beyond that already authorized in relation to their base property qualifications and corresponding BLM grazing permit. Compl. ¶ 28; Compl. Ex. 5, at 109. The Contract was binding on all heirs and future assignees, precluding the Easons or their successors-in-interest, including Eason LLC and the Whites, from "interpos[ing] [any] further objection[s] to BLM reservoir construction or water use." Compl. Ex. 5, at 109; BLM's Mem. in Supp. of Mot. Dismiss Ex. A; Chad Decl. Ex. C, at 3.

In early 2006, the Whites made a call for water. Compl. ¶ 30. Although it was later rescinded, the Oregon Water Resources Department ("OWRD") required the BLM to develop a plan to meet this and any future calls for water. *Id.*; Compl. Ex. 5, at 109; Chad Decl. Ex. C, at 3. In May 2008, the BLM issued an environmental assessment ("EA"), which set forth its plan "to comply with Oregon State water law by satisfying senior water right calls in a way that fits within the BLM's budget and time limitations." Compl. ¶ 32; Compl. Ex. 5, at 109; Chad Decl. Ex. C, at 3. In relevant part, the BLM determined that, because the subject reservoirs as originally designed did not have

---

[1]    Because plaintiffs did not number the exhibits to their complaint, the Court refers to the page numbers assigned in the docket. Further, although plaintiffs did not attach the Contract or final BLM decision to their complaint, they incorporate these documents by reference and their authenticity is not disputed. Accordingly, the Court considers these documents, which are attached as Exhibit A to the BLM's opening brief and Exhibit C to Carolyn Chad's declaration, respectively, in evaluating whether dismissal is proper under Fed. R. Civ. P. 12(b)(6). Fed. R. Evid. 201(b); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

[2]    An AUM corresponds to "the amount of forage necessary for the sustenance of one cow or its equivalent for a period of 1 month." 43 C.F.R. § 4100.0-5. The parties dispute whether the AUMs furnished under the Contract qualify as "trade-of-use AUMs" or "exchange-of-use AUMs." *Compare* BLM's Reply to Mot. Dismiss 5 n.2, *with* Pls.' Surreply to Mot. Dismiss 3-5. Because resolution of this issue is not determinative, the Court will simply refer to forage provided under the Contract as "additional," "supplemental," or "extra."

any means of evacuating water, there was no economically feasible way to empty the reservoirs without eliminating most of them. Compl. Ex. 5, at 109-10; Chad Decl. Ex. C, at 3. Thus, the EA's proposed alternative was to retrofit four to eight of these reservoirs with a pipe and valve, and abandon and reclaim the remaining sites. Compl. Ex. 5, at 109-11; Chad Decl. Ex. C, at 3; Compl. ¶ 32. In exchange, the BLM would cancel plaintiffs' extra 1,400 AUMs due to "the lack of an assurance that the Bureau would be consistently able to hold water in any reservoirs . . . Public benefits of maintaining the [Contract] are no longer present in the absence of dependable water in reservoirs to support livestock grazing, wild horses, and other public land uses." Compl. Ex. 5, at 110, 118; Chad Decl. Ex. C, at 4, 12. Because the EA concluded that the proposed action would not result in a significant impact on the human environment, it was accompanied by a Finding of No Significant Impact ("FONSI"). Compl. Ex. 5, at 124-26; Chad Decl. Ex. C, at 18-20.

Thereafter, plaintiffs administratively commented on the EA; the BLM responded to plaintiffs' comments, added an additional reservoir, and affirmed the EA under 43 C.F.R. § 4160.1 in July 2008. Compl. ¶¶ 34-36; Compl. Ex. 5, at 129-37. Ultimately, the BLM selected the EA's proposed alternative of retrofitting a limited number of reservoirs and abandoning the remainder "for implementation as the most practical means of complying with Oregon State Water Law and satisfying the Whites' call for water." Compl. Ex. 5, at 130; *see generally* Chad Decl. Ex. C. The decision established a means for cancelling the Whites' extra 1,400 AUMs in proportion to removing or retrofitting the 20 reservoirs. Compl. Ex. 5, at 130. Although plaintiffs were explicitly informed of their right to protest that decision in accordance with 43 C.F.R. § 4160.2 or file an appeal with the Department of the Interior's Office of Hearing and Appeals ("OHA"), they declined to do so. Compl. ¶ 37.

Between late 2008 and early 2011, the BLM performed work on 19 of the 20 reservoirs and reduced plaintiffs' 1,400 AUMs accordingly. *Id.* at ¶¶ 39, 42; Compl. Ex. 5, at 4. In March 2011, the BLM cancelled plaintiffs' remaining additional AUMs. Compl. ¶¶ 40, 42. In September 2011, the BLM sent a letter to the OWRD describing the work it had completed in relation to the subject reservoirs, acknowledging that "the Whites have made a call for water for the 2012 water year[,]" and requesting "direction from the OWRD on what actions will be required of the BLM to satisfy [its] obligation to the Whites' water call." Chad Decl. Ex. B, at 2.[3] In February 2012, the OWRD responded to the BLM's correspondence, "thank[ing] [the BLM for its] cooperation and for the completion of the plan," and confirming that the BLM's work would "allow timely releases to satisfy downstream senior water right calls." Chad Decl. Ex. A, at 1-3.

Plaintiffs do not allege that their 2012 call for water was not fulfilled and there is no indication that they made a call for water in 2013. *See generally* Compl. Plaintiffs nonetheless believed that the BLM had not completed all work described within the EA. *Id.* at ¶ 40. As such, in October 2013, the Whites hired a paid consultant to prepare a report "on the status of the implementation of the Final Decision." *Id.* at ¶ 41. This report concluded that the BLM had "adequately" executed the EA in relation to five reservoirs; however, the EA had not been implemented satisfactorily or to completion on an additional 14 reservoirs. Compl. Ex. 5, at 1. In January 2014, the Whites sent a letter to the BLM's Jordan Field Office[4] "making call on water to

---

[3]    With the exception of Exhibit C to Ms. Chad's declaration, the facts and evidence included in the parties' supplemental briefs are relevant only to the extent they provide additional context for the parties' dispute or relate to subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

[4]    Plaintiffs' previous calls for water were lodged directly with the OWRD, the party "responsibl[e] [for] ensur[ing] the senior water rights are satisfied." Chad Decl. Ex. A, at 1, Chad Decl. Ex. C, at 3, Compl. Ex. 5, at 109. In it unclear from the record before the Court whether plaintiffs' 2014

fulfill all of their water rights for the 2014 irrigation season" and requesting a response to their consultant's report, which they included as an attachment. Compl. Ex. 6. In February 2014, the BLM replied to the Whites' letter as follows: "[w]e recognize that there may be some inadequacies regarding dead storage of water[,] [however, we] are working closely with OWRD to address these issues and in accordance with direction from OWRD we will take the necessary actions to release all possible water when a call in made." Compl. Ex. 7. In March 2014, the Whites sought further information regarding what "actions [the] BLM has taken to this date to release the water necessary to fulfill [their January 2014] call." Compl. Ex. 8.

On June 13, 2014, after "not hear[ing] anything further from the BLM," plaintiffs filed a complaint in this Court, alleging claims for: (1) mandamus, 28 U.S.C. § 1361; (2) declaratory judgment, 28 U.S.C. §§ 2201-02; (3) unreasonable delay, 5 U.S.C. § 706(1); and (4) arbitrary and capricious final agency action, 5 U.S.C. § 706(2). Compl. ¶¶ 46, 48–71. On September 24, 2014, the BLM filed the present motion to dismiss. On December 19, 2014, the parties lodged supplemental briefs in accordance with the Court's request.

## STANDARD OF REVIEW

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be either facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger assets that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* By contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In evaluating a factual attack, the court

---

call was communicated to the OWRD. In any event, the complaint does not allege that plaintiffs made a call for water to the OWRD in 2014.

Page 6 - FINDINGS AND RECOMMENDATION

may hear evidence regarding subject matter jurisdiction and resolve factual disputes where necessary: "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the [court] from evaluating for itself the merits of jurisdictional claims." *Kingman*, 541 F.3d at 1195 (citation and internal quotations omitted). The party who seeks to invoke the subject matter jurisdiction of the court has the burden of establishing that such jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of a Fed. R. Civ. P. 12(b)(6) motion, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Nevertheless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).

## DISCUSSION

The central contention in plaintiffs' complaint is that the BLM "impaired" its senior water rights by first constructing the subject reservoirs in the 1960s and, later, by failing to adequately and completely implement work described in the EA. As relief, plaintiffs request that the Court order the BLM to immediately remove or retrofit all twenty reservoirs at issue, or reinstate the 1,400

AUMs afforded under the Contract.[5]

The BLM argues that dismissal is warranted for three reasons. First, the BLM asserts that this Court lacks subject matter jurisdiction over plaintiffs' mandamus and declaratory judgment claims because the United States did not consent to suit. Second, the BLM contends that plaintiffs failed to exhaust administrative remedies in regard to their arbitrary and capricious claim under 5 U.S.C. § 706(2) of the Administrative Procedures Act ("APA"). Finally, according to the BLM, plaintiffs' claims fail at the pleadings level.

I.    Subject Matter Jurisdiction

Three threshold jurisdictional issues must be resolved in relation to plaintiffs' complaint: the existence of a justiciable controversy, exhaustion of administrative remedies, and sovereign immunity.

A.    Justiciable Controversy

Federal courts have an independent duty to address issues of subject matter jurisdiction under Article III of the United States Constitution before reaching the merits of a case. *See United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004) (the "district court ha[s] a duty to establish subject-matter jurisdiction . . . sua sponte, whether the parties raised the issue or not"). Article III requires that federal courts preside over actual cases or controversies. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983) (per curiam). This requirement is unmet where the plaintiff lacks standing or asserts unripe claims.

Standing refers to the "personal interest that must exist at the commencement of the

---

[5]    The complaint acknowledges that the BLM construed the Contract as breached by the Whites' 2006 call for water. Compl. ¶ 30. Although plaintiffs "disagreed with the BLM's view," they do not allege any contract-related claims. *Id.*

litigation" and continue throughout its existence. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000). The "personal interest" that constitutes standing consists of three elements: (1) an injury-in-fact - i.e. an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 181-82. The ripeness doctrine prevents the court from overseeing matters that are premature for review because the injury is speculative and may never occur. *See W. Oil & Gas Ass'n v. Sonoma Cnty.*, 905 F.2d 1287, 1290 (9th Cir. 1990), *cert. denied*, 498 U.S. 1067 (1991) ("[t]he ripeness inquiry asks whether there yet is any need for the court to act"). In deciding whether an issue is ripe, the court evaluates both the fitness of the issue for judicial review and the hardship on the parties if the court withholds consideration. *Standard Ala. Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990) (citation omitted). Accordingly, "[t]he constitutional component of ripeness overlaps with the 'injury in fact' analysis for Article III standing." *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

Here, plaintiffs failed to establish the existence of a justiciable controversy. Plaintiffs assert broadly that the BLM's failure to remove and retrofit the 20 reservoirs in question impairs their senior water rights. *See, e.g.*, Compl. ¶¶ 28, 49, 56, 64. However, plaintiffs do not directly argue or allege a denial of the water they want and/or need to satisfy those rights. In addition, the BLM submitted evidence that it "is capable of meeting Plaintiffs' call for water." BLM's Supplemental Br. 5; Chad Decl. ¶¶ 5-9; Chad Decl. Exs. A-B. The BLM also furnished evidence demonstrating that it "substantially complied" with the EA. BLM's Supplemental Br. 2-5; *see generally* Chad Decl. Indeed, the OWRD reviewed the BLM's work and determined, in February 2012, that "no further action on [the BLM's] part to modify the reservoirs is necessary at this time" because the BLM's

Page 9 - FINDINGS AND RECOMMENDATION

actions pursuant to the EA "allow [for the] timely release [of water] to satisfy downstream senior water rights." BLM's Supplement Br. 2; Chad Decl. Exs. A-B. In light of this evidence, the Court cannot conclude that plaintiffs have suffered an injury-in-fact that is concrete, particularized, actual, imminent, and likely to be redressed by a favorable ruling.

Additionally, the 2014 irrigation season has expired and plaintiffs have not made another call for water in relation to 2015. Chad Decl. ¶ 10. The alleged harm is therefore contingent upon events that are not certain to occur. As such, there is no current need for this Court to act and plaintiffs will not suffer any hardship as a result. *See, e.g.*, *Oliver v. Delta Fin. Liquidating Trust*, 2012 WL 3704954, *4 (D.Or. Aug. 27, 2012) (declaratory judgment claim relating to a residential security instrument was not yet ripe in the absence of any action to enforce that security instrument). Any decision that this Court could reach based on the speculative events alleged in the complaint would be advisory in nature. These are precisely the circumstances that federal courts are prevented from adjudicating under Article III. The BLM's motion should be granted.

B.    Sovereign Immunity

"It is elementary that the United States, as sovereign, is immune from suit save as it [expressly and affirmatively] consents to be sued." *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (citation and internal quotations omitted). Absent a waiver of sovereign immunity, a court lacks subject matter jurisdiction over a suit against the United States or one of its agencies. *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1087 (9th Cir. 2007). The party asserting a claim against the United States bears "the burden of establishing [the government's] unequivocally expressed waiver." *Id.* at 1088. Although they confer jurisdiction, neither the Declaratory Judgment

Act nor the mandamus statute provide a waiver of sovereign immunity.[6] 28 U.S.C. §§ 1361, 2201-02; *see also Burns Ranches, Inc. v. U.S. Dep't of the Interior*, 851 F.Supp.2d 1267, 1170-72 (D.Or. 2011) ("the Declaratory Judgment Act [is] not a consent of the United States to be sued, and merely grants an additional remedy in cases where jurisdiction already exists in the court") (citation and internal quotations omitted); *Hou Hawaiians v. Cayetano*, 183 F.3d 945, 947 (9th Cir. 1999) ("sovereign immunity . . . has not been waived by the mandamus statute") (citation omitted); *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923 (9th Cir. 2009) (explaining that sovereign immunity and subject matter jurisdiction, while related, are "distinct" concepts).

Plaintiffs' complaint is silent regarding the issue of sovereign immunity waiver and the BLM's motion makes clear that it did not consent to suit. *See* BLM's Mem. in Supp. of Mot. Dismiss 10-11, 13-14. In response, plaintiffs assert, without analysis or citation to relevant precedent, that their mandamus and declaratory judgment claims fall "within the exceptions to sovereign immunity recognized by the Ninth Circuit" because the BLM's actions "exceed its statutory powers" and "amoun[t] to a taking under the Fifth Amend to the U.S. Constitution." Pls.' Resp. to Mot. Dismiss 8.

The Court finds that plaintiffs' blanket assertion, without more, is insufficient. Regardless, no such exception exists here. There are two recognized exceptions to the sovereign immunity doctrine: "'(1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are

---

[6]   Conversely, the APA provides a waiver of sovereign immunity where the challenged action falls within 5 U.S.C. § 706. *Equal Emp't Opportunity Comm'n v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085-86 (9th Cir. 2010), *cert. denied*, 132 S.Ct. 91 (2011).

constitutionally void.'"[7] *Smith v. Grimm*, 534 F.2d 1346, 1351 n.6 (9th Cir. 1976) (quoting *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963)).  Neither plaintiffs' complaint nor their briefs make reference to ultra vires acts by individual officers. *See generally* Compl.; Pls.' Resp. to Mot. Dismiss; Pls.' Surreply to Mot. Dismiss. In fact, the allegation that plaintiffs rely on to support the existence of an exception merely states that the BLM itself has violated various sources of law. Pls.' Resp. to Mot. Dismiss 8 (citing Compl. ¶ 49). Because plaintiffs seek to compel the BLM to act, their suit is one against the United States and not individual officers. *See Dugan*, 372 U.S. at 620 (a suit is considered one against the sovereign, even if nominally aimed at an official, "if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act") (citations omitted); *see also Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949) (a suit alleging ultra vires acts may still fail "as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property").

Furthermore, although plaintiffs refer to the Fifth Amendment in their complaint, they did not  include a takings claim. *See* Compl. ¶¶ 49, 70-71. Even if they had, the Fifth Amendment does not require that the government provide immediate compensation at the time of the taking; rather, it guarantees the existence of an adequate process for obtaining compensation. *Bay View, Inc. on*

---

[7]    These exceptions are narrowly construed. Plaintiffs have not cited to, and the Court is not aware of, any authority, from either within or without the Ninth Circuit, that has applied one of these exceptions to overcome the waiver requirement under similar or analogous circumstances.

*behalf of AK Native Village Corps. v. Ahtna, Inc.*, 105 F.3d 1281, 1284-85 (9th Cir. 1997) (citations

omitted). Congress has provided such a process through the Tucker Act, 28 U.S.C. § 1491. *Id.* In

sum, even if the BLM's actions had resulted in a taking, it does not necessarily follow that the

government acted outside its authority. Because no exception to the waiver of sovereign immunity

applies in the case at bar, this Court lacks jurisdiction over plaintiffs' first and second claims.

       C.      Exhaustion of Administrative Remedies

       The APA "requires that plaintiffs exhaust available administrative remedies before bringing

their grievances to federal court." *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th

Cir. 2002). Exhaustion is a jurisdictional requirement. *Or. Natural Desert Ass'n v. Bureau of Land

Mgmt. ("ONDA")*, 2014 WL 4832218, *1-2, 10-14 (D.Or. Sept. 29, 2014). The purpose of the

exhaustion doctrines is to allow administrative agencies to utilize their expertise, correct any

mistakes, and avoid unnecessary judicial intervention. *Buckingham v. Sec'y of the U..S. Dep't of

Agric.*, 603 F.3d 1073, 1080 (9th Cir. 2010).

       In their fourth claim, plaintiffs invoke the APA and attack the EA itself as being contrary to

law. *See* Compl. ¶¶ 69-70 (alleging that the EA "was incapable of conforming to Oregon State Water

Law and satisfying the Plaintiffs' call for water"); *see also Natural Res. Def. Council v. Nat'l

Marine Fisheries Serv.*, 421 F .3d 872, 877 (9th Cir. 2005) (under 5 U.S.C. § 706(2) of the APA,

the court evaluates whether the challenged agency action was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law") (citation and internal quotations omitted).

Nevertheless, plaintiffs' responsive brief is inconsistent with the complaint's allegations; they state

repeatedly that the EA "promised to provide exactly the solution they were hoping for." Pls.' Resp.

to Mot. Dismiss 5; *see also id.* at 11 ("why would [they] appeal a decision that purported to give

them exactly what they wanted - i.e. the complete removal or retrofitting of all the reservoirs in

Page 13 - FINDINGS AND RECOMMENDATION

question in exchange for cancelling all of their exchange-of-use AUMs?"); Compl. ¶ 71 (plaintiffs requesting, as relief for their fourth claim, that the Court "direct the BLM to immediately remove all of the twenty (20) water projects implicated in the Final Decision"). The Court accepts plaintiffs' subsequent insistence that the EA, as opposed to its implementation, was proper and in accordance with the law - i.e. that it was not arbitrary and capricious within the meaning of 5 U.S.C. § 706(2).[8]

In any event, plaintiffs failed to exhaust their administrative remedies. The BLM issued the decision that serves as the basis of this lawsuit "under the BLM's grazing regulations at 43 C.F.R. § 4100, *et seq.*" BLM's Mem. in Supp. of Mot. Dismiss 17; *see also ONDA*, 2014 WL 4832218 at *10-14 (summarizing the exhaustion and finality requirements as they relate to decisions issued under the BLM's grazing regulations). It is undisputed that plaintiffs elected not to challenge the BLM's decision by lodging a protest or filing an appeal or stay petition with the OHA, thereby rendering the EA and the corresponding FONSI final. Compl. ¶ 37; Pls.' Resp. to Mot. Dismiss 5, 11; *see also* 43 C.F.R. §§ 4160.2, 4160.3(a), 4.470(a). If, as alleged in the complaint, plaintiffs perceived the EA as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, they were required to contest that decision before it became final in order to allow the agency to correct any mistakes and address all issues in the first instance. *See White Mountain Apache Tribe v. Hodel*, 840 F.2d 675, 677-78 (9th Cir. 1988) (dismissing an 5 U.S.C. § 706(2) claim for failure to exhaust where the plaintiff "has admittedly not pursued any appeals of the management decisions which it seeks to challenge in district court").

---

[8]   The Court acknowledges that ordinarily "'new' allegations contained in the [plaintiffs'] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Nevertheless, where, as here, the plaintiffs admit in a responsive brief that certain requisite elements of their claim are not present, dismissal is warranted. *See, e.g.*, *Thomas v. OneWest Bank, FSB*, 2011 WL 867880, *3 (D.Or. Mar. 10, 2011).

To the extent that plaintiffs assert that they were not required to exhaust their administrative remedies pursuant to *Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002), their argument is unpersuasive. In *Hahn*, environmental groups challenged the agency's issuance of grazing permits to cattle ranchers because overgrazing was causing environmental harm. *Hahn*, 307 F.3d at 820. The defendants contended that the district court erred by ordering interim equitable relief because "[i]t is undisputed that the Environmental Groups did not exhaust their administrative appeals" before filing suit. *Id.* at 823-25. *Hahn* summarized the issue as follows:

> [t]he question before us is whether the BLM's administrative appeal regulations provide procedures that effectively render inoperative the challenged decision pending appeal. If the regulations do not allow for the decision to be rendered inoperative pending administrative appeal, then exhaustion of administrative appeals is not required and the matter was properly before the district court.

*Id.* at 825; *see also* 43 C.F.R. § 4.479.

The *Hahn* court noted that, under 43 C.F.R. § 4.21, an "aggrieved party must file not only an appeal but must also file a petition for a stay of the decision pending appeal as well," yet "additional BLM regulations" allowed continued grazing under the challenged grazing permit "even when a stay is granted." *Hahn*, 307 F.3d at 825-27. The stay at issue in *Hahn* did "not render the permit decision inoperative but actually implement[ed] an unreviewed decision to renew grazing authorizations and at the same time allow[ed] grazing practices that are known to harm the environment." *Id.* at 827. The *Hahn* court held "that exhaustion [was] not required" because "under the facts of this case the BLM's regulations render[ed] the decision 'inoperative' in name only, while in fact implementing an unreviewed decision." *Id.* at 827-28.

Thus, as this Court recently explained, "whether exhaustion is required [under *Hahn*] hinges on whether an OHA stay of the agency decision is a true stay - i.e. whether it actually stops the harm alleged to flow from the proposed agency action." *ONDA*, 2014 WL 4832218 at *12 (citations

omitted). In this case, plaintiffs allege that they are harmed by an agency decision approving the retrofication and removal of 20 reservoirs. Compl. ¶¶ 66-71. Unlike *Hahn*, and exactly as in *ONDA*, plaintiffs here do not challenge the underlying resource management plan, which authorizes grazing generally, or the issuance of a grazing permit or any specific harms associated therewith, such as overgrazing. As a result, the regulation under which continued grazing was allowed in *Hahn*, even with an OHA stay in place, is inapplicable. *Hahn*, 307 F.3d at 825-28; 43 C.F.R. § 4160.4(b); Chad Decl. Ex. C; *see also ONDA*, 2014 WL 4832218 at *1-2, 11-12 (dismissing an APA claim under analogous circumstances). Because an OHA stay would have rendered the proposed action inoperative, as it actually would have stopped the BLM from taking any action in relation to the subject reservoirs, plaintiffs were required to exhaust their administrative remedies prior to seeking recourse in this Court pursuant to 5 U.S.C. § 706(2). Therefore, this Court lacks subject matter jurisdiction and plaintiffs' claims should be dismissed.

II.    <u>Failure to State a Claim</u>

        Even if subject matter jurisdiction was not lacking, plaintiffs' pleadings are deficient in two respects. First, both the APA and mandamus statute require the existence of a separate legal authority whose violation forms the basis for the complaint. *See Or. Natural Res. Council v. Thomas*, 92 F.3d 792, 798-99 (9th Cir. 1996) (a stand-alone APA claim cannot be sustained under 5 U.S.C. § 706(2)); *Norton v. S. Utah Wilderness Ass'n*, 542 U.S. 55, 64 (2004) (an unreasonable delay claim "can proceed [under 5 U.S.C. § 706(1)] only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take"); *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003) (mandamus is an extraordinary remedy that requires a showing the defendant had a "duty [that] is ministerial and so plainly prescribed as to be free from doubt") (citations and internal quotations omitted). This is because, rather than imposing substantive requirements, the

Page 16 - FINDINGS AND RECOMMENDATION

APA and mandamus statute provide frameworks for review. *El Rescate Legal Servs. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991). Absent a statute with substantive standards, judicial review is precluded because there is no "law to apply [and] 'no meaningful standard against which to judge the agency's exercise of discretion.'" *Thomas*, 92 F.3d at 798 (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

According to plaintiffs, the complaint identifies five legal authorities that compel the BLM to remove or retrofit the subject reservoirs or reinstate their 1,400 AUMs: (1) "Or. Rev. Stat. § 536.005, *et seq.*"; (2) "the Fifth Amendment to the U.S. Constitution"; (3) BLM regulations, 43 C.F.R. § 4120.3-1(a) and 43 C.F.R. § 4130.6-1; (4) the EA; and (5) the Contract. Pls.' Resp. to Mot. Dismiss 9-13, 17 (citing Compl. ¶¶ 28, 35, 49-50, 53). Plaintiffs also contend that the "BLM, exercising the authority granted to it under the Taylor Grazing Act, 43 U.S.C. § 315 *et seq.*, Federal Land Policy and Management Act, 43 U.S.C. § 1701 *et seq.*, and the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*, incorporated these statutory bases into its decision making process." *Id.* at 17.

Contrary to plaintiffs' assertion, the Court finds that none of these sources require the BLM to eliminate or retrofit reservoirs, or reinstate contractually-authorized supplemental AUMs. Chapter 536 of the Oregon Revised Statutes merely establishes an administrative scheme for the Oregon water authority. *See* Or. Rev. Stat. § 536.005, *et seq.*; *see also Teel Irrigation Dist. v. Water Resources Dep't of Or.*, 323 Or. 663, 919 P.2d 1172 (1996) (citing to "ORS chapter 536 (establishing Water Resources Administration)" in support of the proposition that "[t]he Water Resources Commission and the Water Resources Department set policy and regulate the appropriation of ground and surface water in this state"). Likewise, to the extent they are even relevant, the federal statutes that plaintiffs rely on neither form the basis of their complaint nor

Page 17 - FINDINGS AND RECOMMENDATION

dictate a discrete agency act that the BLM was required to take in this context. *See generally* Compl.; *see also Sierra Club v. Bosworth*, 510 F.3d 1016, 1018 (9th Cir. 2007) (the National Environmental Policy Act is "a procedural statute that does not mandate particular results"); *Gardner v. Bureau of Land Mgmt.*, 638 F.3d 1217, 1222 (9th Cir. 2011) (the Federal Land Policy and Management Act is "a broad statutory framework setting forth the goals and management requirements" for public lands); *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1044 (9th Cir. 2013) (the Taylor Grazing Act regulates grazing on public lands to improve rangeland conditions). That plaintiffs neglected to cite a single specific provision within these regulatory schemes lends further support to the inadequacies of their mandamus and APA claims. *See, e.g.*, Compl. ¶¶ 49, 69 (referring only to "O.R.S. § 536, *et seq.*" or "Oregon State Water Law").

In addition, the BLM regulations that plaintiffs cite are discretionary and, as discussed above, the Fifth Amendment's takings clause merely provides a framework for obtaining compensation. *See* 43 C.F.R. § 4120.3-1(a)⁹ ("[r]ange improvements shall be installed, used, maintained, and/or modified on the public lands, or removed from these lands, in a manner consistent with multiple-use management"); 43 C.F.R. § 4130.6-1 (outlining the circumstances under which the BLM "may" issue an "exchange-of-use grazing agreement"). Finally, neither the EA nor the Contract constitute "a specific legislative command." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).

In other words, "'[c]ease impairing Plaintiffs' water rights' is not a 'ministerial duty' that this Court can compel because the BLM has a great deal of discretion in determining how to comply with state water law." BLM's Reply to Mot. Dismiss 6. The EA itself recognizes that, "[a]lthough

---

⁹    Plaintiffs' assert in their response brief that they raised this provision initially in paragraph 53, but the complaint does not, in fact, cite to 43 C.F.R. § 4120.3-1. *See* Compl. ¶ 53.

it is not BLM's discretion whether the agency would release water in response to calls to satisfy senior water rights which are downstream from its stock-water reservoirs, BLM does have discretion how that water would be released." Chad Decl. Ex. C, at 3. The fact that both parties identify means outside of those discussed in the EA through which a call for water from the Whites could be fulfilled emphasizes the BLM's considerable discretion. *See* BLM's Reply to Mot. Dismiss 6; Pls.' Supplemental Br. 3-4. In sum, allowing plaintiffs' APA and mandamus claims to proceed would invite the Court to compel the BLM to take an action - i.e. remove or retrofit twenty reservoirs, or, alternatively, furnish plaintiffs with an additional 1,400 AUMs - not clearly mandated by statute, regulation, or any other legal authority.[10] As a result, plaintiffs' first, third, and fourth claims fail at the pleadings level.

Second, plaintiffs have recourse with the state. As referenced herein, the OWRD is the state agency charged with administration of the laws governing water resources and one of its functions is to protect existing water rights. The complaint acknowledges that plaintiffs' rights are

---

[10]  This is because, as noted above, plaintiffs' lawsuit is primarily concerned with the implementation of the EA. *See, e.g.*, Compl. ¶¶ 38-42; *see also* Pls.' Resp. to Mot. Dismiss 11 ("[t]he problem is that BLM did not do what its Final Decision said it would do; Plaintiffs are simple trying to hold the agency to its word"); *id.* at 12 ("the discrete actions that the BLM was legally required to take was the removal and retrofitting of all twenty (20) reservoirs identified in the 2008 Final Decision"). However, implementation of an agency action is not subject to judicial review. *See Montana Wilderness Ass'n, Inc. v. U.S. Forest Serv.*, 314 F.3d 1146, 1150 (9th Cir. 2003), *vacated on other grounds by* 542 U.S. 917 (2004) ("maintenance activities [that] implement [the agency's] travel management and forest plans" did "not fit into any of the statutorily defined categories for agency action" and were not subject to court review); *Cal. Sportfishing Prot. Alliance v. Fed. Energy Regulatory Comm'n*, 472 F.3d 593, 599 (9th Cir. 2006) ("the granting of the license [is] a federal agency action [but] the continued operation of the project . . . is not a federal agency action"); *see also Village of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 195-96 (4th Cir. 2013) ("project implementation is neither agency action nor final agency action subject to judicial review under the APA") (citations and internal quotations omitted). This rule exists to prevent the plaintiff from "demand[ing] a general judicial review of the BLM's day-to-day operations." *Lujan*, 497 U.S. at 899.

"enforceable under Title 45 of the Oregon Revised Statutes, O.R.S.§ 536.005, *et seq.*" Compl. ¶ 49. Plaintiffs are also coterminously "pursuing action at the state level to compel [OWRD] to enforce [their] water rights." *Id.* at ¶ 53. In light of these circumstances, it is unclear why relief from the state is not both available and preferable. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (in deciding whether to entertain a claim under the Declaratory Judgment Act, "[t]he district court should avoid needless determination of state law issues . . . If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court") (citations omitted).

In so finding, the Court acknowledges plaintiffs' assertion that "any remedy afforded by [the OWRD] is contingent on the BLM removing and retrofitting its water projects." Compl. ¶ 53. However, that the OWRD itself cannot go onto BLM land to work on the twenty reservoirs at issue does not mean no remedy is available with the state. In fact, the OWRD has mechanisms to ensure compliance with state water rights. *See, e.g.*, Or. Rev. Stat. § 540.370 (granting OWRD authority to enforce compliance with orders or decree); Or. Admin. R. 690-250-0020 (granting OWRD authority to determine whether a call for water is futile); Or. Admin. R. 690-250-0120 (granting OWRD authority to "distribute the surface water and ground water by relative priority"). Thus, as both the complaint and the parties' briefs recognize, the OWRD has been involved in ensuring the BLM's compliance with state water law. *See* Compl. Ex. 5, at 109; Chad Decl. Ex. C, at 3; *see also* Compl. Ex. 7 (in response to the Whites' 2014 call for water, the BLM explained that it was "working closely with OWRD to address [any remaining inadequacies regarding dead storage of water] and in accordance with direction from OWRD [would] take the necessary actions to release all possible water when a call in made"). For these reasons, plaintiffs' remedy at this time lies with the OWRD and the complaint fails to state a claim upon which relief can be grated.

Page 20 - FINDINGS AND RECOMMENDATION

## RECOMMENDATION

For the foregoing reasons, the BLM's motion to dismiss (docket # 11) should be GRANTED and plaintiffs' complaint (docket # 1) should be DISMISSED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due by March 9, 2015.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this  _19th_  day of February, 2015.


    /s/ Patricia Sullivan

Patricia Sullivan
United States Magistrate Judge

Page 21 - FINDINGS AND RECOMMENDATION